[Cite as *State v. Jones*, 2013-Ohio-4242.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

STATE OF OHIO                              :
                                           :       Appellate Case No. 2012-CA-32
        Plaintiff-Appellee                 :
                                           :       Trial Court Case No. 12-CR-14
v.                                         :
                                           :
EMANUEL JONES                              :       (Criminal Appeal from
                                           :        Common Pleas Court)
        Defendant-Appellant                :
                                           :

· · · · · · · · · ·

O P I N I O N

Rendered on the 27th day of September, 2013.

· · · · · · · · · ·

DAVID A. WILSON, Atty. Reg. #0073767, by LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, Post Office Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

SHERYL A. TRZASKA, Atty. Reg. #0079915, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, P.J.

        {¶ 1}    Defendant-appellant Emanuel Jones appeals from his conviction and sentence for

Aggravated Robbery, with a firearm specification. Jones contends that the juvenile court abused its discretion by transferring his case to the general division of the court of common pleas for criminal prosecution.

{¶ 2} We conclude that the juvenile court did not abuse its discretion by transferring Jones's case to the general division of the court of common pleas. Accordingly, the judgment of the trial court is Affirmed.

### I. Jones and Three Other Males Rob a "Drive Thru" and an Individual

{¶ 3} In October 2011, Emanuel Jones and three other males arrived at John's Drive Thru. At that time, Jones was sixteen years of age. One of the three males with Jones held a gun to the head of the female employee and demanded that she give him the money in the cash register. The group of males also turned to a friend of the female employee at the Drive Thru and demanded his wallet. The man whose wallet was taken later identified Jones as one of the four robbers. Evidence retrieved by the police, including the surveillance video from the robbery, supported the eyewitness identification of Jones as one of the robbers.

### II. Course of the Proceedings

{¶ 4} Jones was charged, as a juvenile, with two counts of Aggravated Robbery, both with a firearm specification. The victim of one robbery was the store itself; the victim of the other was a friend of the sole employee working at the store at the time. The State sought to have the case transferred to the general division of the common pleas court, to have Jones tried as an adult.

{¶ 5} Jones had a prior record of juvenile delinquency, including Aggravated

Menacing, a first-degree misdemeanor; Criminal Mischief, a third-degree misdemeanor; Chronic Truancy, a minor misdemeanor; and numerous probation violations. He was on probation when he allegedly committed the Aggravated Robberies in this case.

{¶ 6} The juvenile court held a probable cause hearing, and found that there was probable cause to believe that Jones committed the offenses charged. Next, the court held an amenability hearing, and found that Jones was not amenable to care or rehabilitation within the juvenile system, and that the safety of the community may require that Jones be subject to adult sanctions. The juvenile court transferred the case to the general division.

{¶ 7} In the general division of the common pleas court, Jones moved to suppress evidence, including his identification at a show-up conducted shortly after the robberies. While the motion to suppress was pending, Jones pled guilty to one count of Aggravated Robbery, including the firearm specification, and the other count, with its specification, was dismissed. Jones was sentenced to five years for the Aggravated Robbery and to three years for the firearm specification, to be served consecutively.

{¶ 8} From the judgment of the trial court, Jones appeals.

### III. The Juvenile Court Did Not Abuse its Discretion
### by Transferring the Case to the General Division

{¶ 9} Jones's sole assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT TRANSFERRED THIS CASE FOR CRIMINAL PROSECUTION. RC. 2152.12; FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

**{¶ 10}** "We review a juvenile court's relinquishment of jurisdiction in discretionary bindover proceedings under an abuse of discretion standard." *State v. Flagg*, 8th Dist. Cuyahoga Nos. 93248 and 93279, 2010-Ohio-4247, ¶ 26, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629. The term "abuse of discretion" has been defined as a decision that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶ 11}** Jones was subject to discretionary transfer by the juvenile court, because Jones was "fourteen years of age or older at the time of the act charged," and he was "charged with an act that would be a felony if committed by an adult." R.C. 2152.10(B). In determining whether to transfer Jones for criminal prosecution, the juvenile court is required to follow the procedures in R.C. 2152.12. R.C. 2152.10(B).

**{¶ 12}** R.C. 2152.12(B) provides that the juvenile court may transfer the case to the general division if the court finds all of the following:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

{¶ 13} In making its decision whether to transfer the case to the general division, the juvenile court must consider whether the applicable factors under R.C. 2152.12(D) indicating that the case should be transferred outweigh the applicable factors under R.C. 2152.12(E) indicating that the case should not be transferred. R.C. 2152.12(B)(3). "The record shall indicate the specific factors that were applicable and that the court weighed." *Id.* "R.C. 2152.12(B)(3) only requires that the record indicate the specific factors that the court 'weighed'; it does not require a written or oral recitation of all statutory factors." *Flagg*, 2010-Ohio-4247, at ¶ 28; Juv.R. 30(G).

{¶ 14} Pursuant to R.C. 2152.12(D), in determining whether to transfer a child to the general division, "the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:"

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or

psychologically

mature enough for the

transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 15} Furthermore, pursuant to R.C. 2152.12(E), in determining whether to transfer a child to the general division, "the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:"

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 16} In its judgment entry transferring the case to the general division, the juvenile court found, in part:

THE COURT FURTHER FINDS that it must consider the factors for and against, transfer as set forth in Revised Code Section 2152.12.

THE COURT FURTHER FINDS the youth has failed to successfully complete the many attempts at rehabilitation offered to him in the past. He was sent to David L. Brown Youth Center for programming and assistance. He received various community based services before he was removed from our community. He has failed to assimilate the information offered to him. He continues to have difficulty with the use of illegal drugs. He continues to have significant anti-social behavior and is dangerous.

THE COURT FURTHER FINDS that the youth has gained limited insight from the previous programming offered to him. He has thoughts, feelings and attitudes toward authority and towards himself, that are not healthy or appropriate. He thinks of himself as a victim and blames those around him for his problems

and failures. He expresses no genuine interest in changing his behavior, his attitude or his values.

THE COURT FURTHER FINDS that the youth is a high risk to re-offend. He exhibits significant aggressive behavior. He is anti-social and disrespectful in everyway. He has an extensive history of aggression and disrespectful behavior in various settings including school, community, and rehabilitation settings.

THE COURT FURTHER FINDS that the results of previous juvenile sanctions and programs show that this youth cannot be rehabilitated within the juvenile system. He is further emotionally, physically and psychologically mature enough for transfer.

THE COURT FURTHER FINDS that there is not sufficient time for rehabilitation of the juvenile in the juvenile system. In fact the court does not find that the youth can be rehabilitated within the juvenile system.

THE COURT FURTHER FINDS that at the time the youth committed the offenses in the complaints that he was on probation with the court for prior delinquent acts.

THE COURT FURTHER FINDS that at the time the youth committed the delinquent offense in this matter he did so, as part of a gang or other organized criminal activity.

{¶ 17} There was only one witness at the amenability hearing, Dr. Daniel Hrinko. Dr. Hrinko was a neutral witness, called by the court. Dr. Hirko testified regarding his examination

of Jones and his review of Jones's social, family, and legal histories. He summarized Jones's past legal and drug problems as follows:

> [Jones] has a history of many misdemeanor offenses with expectations of probation and other similar requirements. He has an extensive history of failing to comply with those, being violating electronic monitoring, failing to comply with the rules of and expectations of probation and other similar things. I believe there had been some positive drug tests at various points in time, and other behaviors that would suggest that he has a general disregard for what's expected by the court.

Tr. 18-19.

{¶ 18} According to Dr. Hrinko, Jones has a history of exercising very poor judgment, views himself as a victim, and fails to recognize the intensity and gravity of situational problems that Jones has created. *Id.* at 19-20. Dr. Hrinko noted that Jones showed no evidence of recognizing the importance or benefit of engaging in mental health or substance abuse treatment. *Id.* at 30. Jones admitted during his examination with Dr. Hrinko that Jones believed counselors were easy to manipulate. *Id.* at 18. According to Dr. Hrinko, Jones has a moderately high probability of continuing his aggressive behavior. *Id.* at 27, 29-32.

{¶ 19} Dr. Hrinko opined that it was possible that Jones could have success within the juvenile system if he had a lengthy, controlled, and structured environment. *Id.* at 36. However, Dr. Hrinko was less than confident that this success was probable, concluding that:

> I believe that the juvenile system, in the totality of what's available, that there are a limited number of possibilities that, in my opinion, might prove helpful

to rehabilitating [Jones].

*  *  *

The attitudes and insight and self perception that I saw as of the time of the evaluation, should those attitudes, levels of insight persist throughout the placement in such a program, then I am pessimistic that such a program would have the desired outcome. But I'm also aware of the fact that many programs are very skilled at helping individuals who maintain those attitudes begin to recognize the importance of shifting those attitudes, and thereby increasing the probability of benefitting from those programs.

*Id.* at 38-40.

{¶ 20} The juvenile court noted several of the key factors in R.C. 2152.12(D) weighing in favor of bindover. The court thoroughly considered the statutory factors at R.C. 2152.12(D) and (E), and the psychological examination of Jones performed by Dr. Hrinko in making its bindover determination. As the record demonstrates, Jones has failed to take advantage of the many opportunities previously presented to him in the juvenile justice system and continues to see himself as a victim. Furthermore, Jones has a moderately high probability of continuing to demonstrate aggressive behavior. Based on the record before us, we conclude that the juvenile court did not abuse its discretion in transferring Jones's case to the general division of the court of common pleas for criminal prosecution.

{¶ 21} Jones's sole assignment of error is overruled.

## IV. Conclusion

**{¶ 22}** Jones's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.

Copies mailed to:

David A. Wilson
Lisa Fannin
Sheryl A. Trzaska
Hon. Richard J. O'Neill