[Cite as *State v. D. H.*, 2015-Ohio-3259.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26383 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2014-CR-2123 |
| v. | : | |
| | : | (Criminal Appeal from |
| D. H. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 14th day of August, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
 Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
 Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

 **{¶ 1}** Defendant-appellant D. H. appeals from his conviction and sentence on two

counts of Robbery, felonies of the second degree, after his transfer from juvenile court based on the juvenile court's finding that he was not amenable to rehabilitation in the juvenile justice system. D. H. argues that the juvenile court erred in relinquishing jurisdiction, rendering his conviction void.

{¶ 2} We conclude that the court failed to identify its reasoning for reaching its finding that D. H. could not be rehabilitated in the juvenile system sufficiently to permit us to conduct meaningful appellate review of its decision. Therefore, we reverse the judg-ment of the trial court and we remand the matter to the juvenile court for reconsideration of its decision to relinquish jurisdiction.

## I. D. H.'s Participation in a "Knock-Out" Game Leads to a Robbery Conviction

{¶ 3} In the spring of 2014, when D. H. was 17 years old, he was involved in two incidents that led him to be charged with delinquency in juvenile court. At the initial juvenile court hearing, D. H. did not contest the existence of facts sufficient to constitute probable cause that he had committed two robbery offenses that would be second degree felonies if committed by an adult. The State alleged that both incidents were a version of the "knock-out" game that had recently been sensationalized on social media. A video of the first incident was recorded by cell phone showing D. H. attack the victim from behind, with no warning and no provocation. When the victim attempted to run away, D. H. pursued him and struck him again, demanding his money and cell phone, and took all the money the victim had, a total of $3.00. Less than one month later, D. H. engaged in another attack upon a different victim, knocking him to the ground, kicking him, and stealing his cell phone and bus pass. The record does not support any finding that either

victim needed medical attention or incurred medical expenses. D. H. admitted to both incidents, but showed no remorse or concern for the victims, and did not believe his actions were serious enough to result in incarceration. Prior to these two incidents, D. H. had not been adjudicated a delinquent, or served any time in a juvenile detention facility. It is not disputed that in 2013, D. H. had an "unofficial" charge of Theft, as a misdemeanor, which was handled informally, without resulting in any juvenile delinquency record.

{¶ 4} The juvenile court conducted an amenability hearing to determine whether D. H. should be bound over to adult court. Prior to the hearing, the juvenile court ordered a "full investigation" and referred D. H. to the court psychologist for an evaluation. At the hearing, the only witness who testified was Erin Dooley, the Principal of Stivers School for the Arts, a high school within the Dayton Public Schools. Principal Dooley confirmed that D. H. had been expelled from school, as a freshman, after more than 40 incidents of skipping class and leaving the building during school hours. After multiple suspensions, alternative disciplinary measures, and referrals for specialized intervention, nothing improved his poor academic performance.

{¶ 5} The parties stipulated to the report filed by the court psychologist, which indicated she had interviewed D. H. and reviewed numerous other reports and records.[1] None of the supplemental reports reviewed by the court psychologist were made part of the record, and the juvenile court did not specifically address or summarize the reports at the hearing, or in the final order and entry relinquishing jurisdiction and transferring D. H. to be prosecuted as an adult. In the final entry, the juvenile court stated that "the Court finds, having carefully considered the testimony and evidence presented, and having

---

[1] To protect the privacy of the juvenile's mental health evaluation, we will not quote or summarize the report, although we did review its contents as part of this appeal.

considered all of the factors which could weigh in favor of transfer" the following:

1. The victim did suffer physical or psychological harm;

2. The victim's physical or psychological vulnerability or age did exacerbate the physical or psychological harm;

3. The child's relationship with the victim did not facilitate the acts charged;

4. The child did not allegedly commit the acts charged as part of a gang or other organized criminal activity;

5. The child did not have a firearm on or about his person or under his control at the time of the act charged;

6. At the time of the act charged, the child was not awaiting adjudication or disposition as a delinquent child, was not under a community control sanction, and was not on parole for a prior delinquency adjudication or conviction;

7. Results of previous juvenile sanctions and programs indicate that rehabilitation is not likely to occur in the juvenile system;

8. The child is emotionally, physically and psychologically mature enough for transfer;

9. There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 6} The final entry of the juvenile court also stated that "[h]aving considered all of the factors which could weigh against transfer, the Court finds" the following:

1. The victim did not induce or facilitate the acts charged;

2. The child did not act under provocation in allegedly committing the acts charged;

3. The child was the principal offender and not under the negative influence or coercion of another person at the time of the act charged;

4. The child did cause physical harm to any person or property and should have had reasonable cause to believe that harm would occur;

5. The child has not been adjudicated a delinquent child in the past;

6. The child is emotionally, physically and psychologically mature enough for the transfer;

7. The child does not have a mental illness[2] and is not a mentally retarded person;

8. There is not sufficient time to rehabilitate the child within the juvenile system, and the level of security available in the juvenile system does not provide a reasonable assurance of public safety.

**{¶ 7}** More factually based findings were placed on the record at the time of the amenability hearing. The juvenile court focused its determination whether D. H. was amenable to care and rehabilitation within the juvenile system by looking at two issues, and stated as follows:

And so for purposes of argument, there are two issues left to be decided: Is there a safety-to-the-community issue to be considered, and/or

---

[2] We note that this conclusion is contrary to the psychologist's report which did discuss a mental health diagnosis recognized by the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) and the need for treatment, which will not be quoted here to protect health care privacy.

is he amenable to treatment as a juvenile.

The first item from my review was whether or not the victim's physical or psychological vulnerability worsened the potential harm, and my answer to that is yes. This young man assaulted, hurt - - and thank God he didn't kill anybody or break any bones, but he assaulted two homeless individuals who were not able to care for themselves.

The second question is: Did his relationship with the victims in any way facilitate the act charged. For today, I'm going to say the answer to that is no, in that he had no relationship with them, but maybe the fact that they were simply homeless was enough to decide, let's attack them.

Did he allegedly commit the act the act charged for hire or as part of a gang or other organized criminal activity. There seems to be no evidence that he did this for hire. Seems to be no reason to believe that he did this as part of a gang, although there is some concern that this was a way to get into a gang, "or other organized criminal activity". Is the game of taking pictures of a victim part of an organized activity? I don't believe so, but again, that's a question in my mind.

He clearly had no firearm on or about his person or under his control, had no other weapon other than his arms and feet.

At the time this happened, to the best of the court's knowledge, he was not under community control or on parole for any type of charge.

Did the result of any prior juvenile sanction and program indicate that rehabilitation will not occur in the juvenile system. There is very limited

information as to whether or not the juvenile justice system was able to help him in the past. He wasn't on probation, but he did — was part of this Court system as a result of an unofficial case, and he did receive services from the Court, granted, on a minor charge. The services he did receive from the court system a year ago in no way stopped him from continuing to commit crimes.

Is he emotionally, physically or psychologically mature enough to transfer. The answer is yes. Simply having a limited education is not a basis to say a child or person is not emotionally, physically or psychologically mature enough for transfer. And his grades are poor. My recollection from Dr. Fujimura's report is that he's at a fifth-grade level in math and fourth-grade level in science and some other very limiting educational abilities, but as the testimony brought out, much of that would occur, I think with most young people who never go to school.

All of the factors I've described are used to lean towards finding him nonamenable to treatment and sending him to the adult court system.

I must balance those off of factors which are detailed to weigh against transferring him to the adult court system, and those are under (E) subsection, and those are very clearly leaning in a certain direction.

Did the victim induce or facilitate the act charged. No. Two homeless men did not cause themselves to be attacked.

The victim — the child acted under provocation in allegedly committing the act charged. The answer to that is no.

Third, the child was not the principal offender, was under the negative influence or coercion of another person at the time of the acts. In both of these cases, it was alleged he was the principal offender, not the follower. The fact, I believe in both cases he was the person doing the majority of the hitting, and the other two separate individuals were the people taking the videoes [sic].

The next question is: The child did not cause physical harm to another person. Obviously, he did.

The child has not been adjudicated delinquent in the past. That is correct. It was unofficial, so that is a yes.

The child is not emotionally, physically or psychologically mature enough to transfer. I believe that he is.

*[Court's comments about the child's health issues deleted here for privacy].*

And then, there is sufficient time to rehabilitate the child within the juvenile justice system, and the level of security available in the juvenile justice system provides a reasonable assurance of public safety.

The youth, I believe is 17 years, 8 months old at this point. That would give this Court approximately three years, three or four months, theoretically to treat the child in the juvenile justice system.

Transcript, June 9, 2014, pgs.52-56.

{¶ 8} The juvenile court went on to address "other relevant factors," primarily regarding the child's family life. Neither the report nor the court entry discusses any of the

programs or structure available in the juvenile justice system that could specifically address the rehabilitative needs of D. H. The psychologist report did not include a recommendation of whether or not D. H. could be rehabilitated in the juvenile justice system.

{¶ 9}  After the juvenile court relinquished jurisdiction and transferred the case to the general division of common pleas, D. H. challenged the discretionary transfer through a motion to dismiss, and the motion was overruled. D. H. pled no contest, was found guilty of two counts of Robbery, and was sentenced to serve a total of four years in the adult prison system.

## II.  Standard of Review

{¶ 10} The Supreme Court of Ohio has consistently applied the abuse-of-discretion standard in the review of discretionary-transfer proceedings from juvenile court to the general division of common pleas court. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E. 2d 584, ¶ 14; *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989); *State v. Carmichael*, 35 Ohio St.2d 1, 298 N.E.2d 568 (1973), paragraphs one and two of the syllabus; *State v. Douglas*, 20 Ohio St.3d 34, 36–37, 485 N.E.2d 711 (1985); and *State v. Golphin*, 81 Ohio St.3d 543, 692 N.E.2d 608 (1998). "[A]n amenability hearing is a broad assessment of individual circumstances and is inherently individualized and fact-based. Thus, a juvenile court's determination regarding a child's amenability to rehabilitation in the juvenile system is reviewed by an appellate court under an abuse-of-discretion standard." *In re M.P.* at ¶14.

{¶ 11} "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond,* 135 Ohio St.3d 343,

2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion is apparent where the trial court's decision does not reveal a "'sound reasoning process.'" *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp .,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). *State v. Jones*, 2d Dist. Clark No. 2013-CA-63, 2014-Ohio-1540, ¶ 23.

## III. Discretionary Transfer Requires Factual Findings that D. H. Is Not Amenable to Rehabilitation in the Juvenile System

{¶ 12} D. H. presents one assignment of error as follows:

THE JUVENILE COURT ERRED IN RELINQUISHING JURISDICTION TO THE GENERAL COURT OF COMMON PLEAS AND THUS THE PROCEEDINGS THERE WERE VOID AB INITIO

{¶ 13} "[I]n a discretionary-bindover proceeding, the court must determine whether the child is amenable to care or rehabilitation within the juvenile system and whether, in order to ensure the safety of the community, the child should be subject to adult sanctions. R.C. 2152.12(B)(3). *See also* Juv.R. 30(C)." *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 38. Juv.R. 30 permits the juvenile court to transfer jurisdiction where the court has considered all statutory factors and determined that there are reasonable grounds to believe that the child is not amenable to care or rehabilitation in the juvenile penal system and where the safety of the community may require the child to remain incarcerated beyond the child's twenty-first birthday. Pursuant to R.C. 2152.12(D) the juvenile court must consider the following factors that weigh in favor of transferring the case to the general division of common pleas court:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 14}  Pursuant to R.C. 2152.12(E), the juvenile court must consider the following factors that weigh against transferring the case to the general division of common pleas court:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 15} When considering all statutory factors, the juvenile court must specifically identify which factors are applicable to its decision, and how such factors weighed in its decision to transfer or retain the case. The statute, R.C. 2152.12(B)(3), mandates this process as follows: "the court shall consider whether the applicable factors under division

(D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed." To assist in making this determination, the statute requires the juvenile court to "order an investigation into the child's social history, education, family situation and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child * * *." R.C. 2152.12 (C).

{¶ 16} In *State v. D.W.,* 133 Ohio St. 3d 434, 2012-Ohio-4544, 978 N.E.2d 894, the Supreme Court of Ohio reiterated the principles set forth in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), identifying that the objectives of juvenile court "are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Id.* at ¶7, quoting *Kent* at 554. It was further acknowledged that "[t]he United States Supreme Court held that 'as a condition to a valid waiver order, [the juvenile] was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision' before being transferred to the adult court for criminal prosecution." *Id.* at ¶14, citing *Kent* at 557. The Supreme Court of Ohio further observed that, "[a] critical stage of the juvenile proceedings, the [amenability] hearing affects whether the juvenile faces a delinquency adjudication, or adult criminal sanctions and the label 'felon.' (Citation omitted) Given the nature and consequences of the amenability hearing, juvenile court judges are entrusted with significant authority when conducting the hearings." *State v. D.W.*, at ¶ 12.

{¶ 17} To conduct a meaningful review of a juvenile court's decision to transfer a case to the general division of common pleas court, we must be able to determine that the court has considered all the applicable statutory factors, based on findings of fact identifying the individualized facts related to the child that weigh for and against transfer. The juvenile court's entry under review contains insufficient factual findings to identify how the court reached its conclusion that D. H. could not be rehabilitated in the juvenile system. The entry does not identify which of the reports and records reviewed by the psychologist were also reviewed and considered by the court. The transcript reveals that no exhibits or documentary evidence were admitted in evidence at the amenability hearing, although the parties stipulated to the content of the psychologist report. The court does not identify or discuss what programs are, or are not, available in the juvenile system to satisfy the child's health needs, as identified in the psychologist report. Additionally, the court does not make any specific findings about the child's educational deficiencies, and does not identify what programs are, or are not, available in the juvenile system to meet D. H.'s educational needs.   The record reveals that D. H.'s age at the time of the amenability hearing would have given him more than 3 years for rehabilitation in the juvenile system, and yet the juvenile court's findings contain no discussion of what rehabilitation goals can, or cannot, be accomplished in the juvenile system in a 3-year period, or what programs are, or are not, available in the juvenile system to accomplish these goals. We note that if the juvenile court had denied the motion to transfer D. H., upon a finding of delinquency, the court could have imposed a number of different juvenile dispositions, described in Chapter 2152 of the Revised Code, ranging from intensive probation to secure confinement for serious youthful offenders. The juvenile

court's entry relinquishing jurisdiction did not discuss why none of these options would suffice to rehabilitate D. H. in the juvenile system, especially in light of the fact that he had no prior delinquency adjudications, to support a conclusion that "rehabilitation of the child will not occur in the juvenile system," as directed by R.C. 2152.12 (D).

{¶ 18} We conclude that the trial court has not provided a sufficient explanation for its decision to permit us to perform meaningful appellate review of its decision under an abuse-of-discretion standard. "The lynchpin of abuse-of-discretion review is the determination whether the trial court's decision is reasonable." *State v. Chase*, 2d Dist. Montgomery No. 26238, 2015-Ohio-545, ¶17, citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Unless the reason or reasons for the trial court's decision are apparent from the face of the record, it is not possible to determine if the decision is reasonable without a more detailed explanation of the reason or reasons for that decision. In *Delong v. Delong,* 2d Dist. Clark No. 94-CA-0056, 1995 WL 118162 (March 15, 1995), we reversed a trial court's award of spousal support, concluding, "[w]here the trial court fails to explain why or how it came to its decision, and that is not apparent from the record, an appellate court cannot resolve an abuse of discretion argument. Then, the appellate court may remand the matter to the trial court to indicate the basis for its [decision] in detail sufficient to permit the appellate court to resolve the issues before it." *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). "Absent supportive findings, we cannot determine the abuse of discretion claimed, and an effort on our part to do so would require an almost de novo review of the issues presented." *Arnett v. Arnett,* 2d Dist. Montgomery No. 20332, 2004-Ohio-5274, ¶ 17. *See also* S*tate v. Chase*, 2d Dist. Montgomery No.

26238, 2015-Ohio-545, ¶¶ 15-18.

{¶ 19} Accordingly, D. H.'s single assignment of error is sustained, and this cause is remanded to the juvenile court for re-consideration of its decision to relinquish jurisdiction, and to provide a more thorough explanation as to why D. H. can, or cannot, be rehabilitated in the juvenile system, with sufficient findings of fact and reasoning to permit us to review that decision under an abuse-of-discretion standard of appellate review, should either party choose to appeal.

### IV. Conclusion

{¶ 20} D. H.'s sole assignment of error having been sustained, the judgment of the trial court is Reversed. The trial court shall enter an order dismissing the indictment and causing D. H. to be transferred forthwith back to the Montgomery County Juvenile Detention Facility on the delinquency complaint. This cause is Remanded to the Juvenile Court for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., dissenting:

{¶ 21} I very respectfully dissent from the majority's conclusion that the juvenile court failed to sufficiently identify its reasoning for deciding that D. H. could not be rehabilitated in the juvenile system. To the contrary, the juvenile court conducted a thorough analysis, and the court's decision is sufficiently supported by the evidence in the record.

**{¶ 22}** Notably, "a juvenile court has wide latitude in deciding whether to retain or to relinquish jurisdiction of a juvenile accused of a criminal offense. *State v. Carmichael*, 35 Ohio St.2d 1, 298 N.E.2d 568 (1973), first paragraph of syllabus. After all, the juvenile court judge is personally familiar with both the juvenile system and the individual juvenile, and is therefore in a superior position to make a determination whether the juvenile is amenable to care or rehabilitation within the juvenile system." *State v. Drane*, 2d Dist. Montgomery No. 23862, 2012-Ohio-1978, ¶ 34 (Fain, J., dissenting).

**{¶ 23}** "To determine whether the child can be rehabilitated and whether adult sanctions are necessary for the safety of the community, the court weighs the competing factors set forth in R.C. 2152.12(D) and (E) and indicates the factors weighed in the record." *State v. Terrell*, 6th Dist. Lucas No. L-04-1131, 2005-Ohio-4871, ¶ 7, citing R.C. 2152.12(B). "The statutory scheme does not dictate how much weight must be afforded to any specific factor and, instead, rests the ultimate decision in the discretion of the juvenile court." *State v. Morgan*, 10th Dist. Franklin No. 13AP-620, 2014-Ohio-5661, ¶ 37.

**{¶ 24}** "As long as the court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, we cannot conclude that the trial court abused its discretion in deciding whether to transfer jurisdiction." *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.), citing R.C. 2152.12(B), *State v. Watson*, 47 Ohio St.3d 93, 95-96, 547 N.E.2d 1181 (1989), *State v. Douglas*, 20 Ohio St.3d 34, 36-37, 485 N.E.2d 711 (1985), and *State v. Hopfer*, 112 Ohio App.3d 521, 535-536, 679 N.E.2d 321 (2d Dist.1996). We have previously stressed that "the test is not whether we would have

reached the same result based upon the evidence in the record, the test is whether the juvenile court abused the discretion confided in it." *Hopfer* at 534. "If there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence." *West* at ¶ 10.

{¶ 25} In interpreting a similar predecessor statute to R.C. 2152.12, the Supreme Court of Ohio held that:

> Neither R.C. 2151.26 nor Juv.R. 30 requires the juvenile court to make written findings as to the five factors listed in Juv.R. 30(E). The rule simply requires the court to consider these factors in making its determination on the amenability issue. Although the better practice would be to address each factor, as long as sufficient, credible evidence pertaining to each factor exists in the record before the court, the bind-over order should not be reversed in the absence of an abuse of discretion.

*Douglas*, 20 Ohio St.3d at 36, 485 N.E.2d 711 (1985). In *Douglas*, the court also stressed that Juv.R. 30(G) "does not require a written finding on each of the five factors listed in Juv.R. 30(E)." *Id.* at 36, fn. 2. At the time, Juv.R. 30(G) stated that "[t]he order of transfer shall state the reasons therefore." Significantly, Juv.R. 30(G) has not been amended since the decision in *Douglas*, and still contains the same wording.

{¶ 26} Paragraph 17 of the majority opinion states that the trial court's decision cannot be meaningfully reviewed because the court failed to identify which of the reports that the psychologist reviewed were also reviewed by the court. In addition, the majority contends that it cannot adequately review the trial court's decision because the court failed to identify or discuss what programs were available in the juvenile system to satisfy

D. H.'s "health" needs, as identified in the psychologist's report.

{¶ 27} The majority opinion also criticizes the trial court decision because the court did not make any specific findings about D. H.'s educational deficiencies, did not identify what programs were available in the juvenile system to meet D. H.'s educational needs, did not discuss what rehabilitation goals could or could not be accomplished in the juvenile system, and did not discuss what programs were available in the juvenile system to accomplish these goals. The majority cites no case authority for these sweeping requirements, and I respectfully submit that research fails to disclose cases mandating this type of particularity in a trial court decision. To the contrary, it has even been said that "the mere fact that the trial court does not mention a specific statutory section in its bindover order, or in comments pursuant to that order, does not mean that it failed to consider that section." *State v. Flagg*, 8th Dist. Cuyahoga Nos. 93248 and 93279, 2010-Ohio-4247, ¶ 27.

{¶ 28} We have also held that " 'R.C. 2152.12(B)(3) only requires that the record indicate the specific factors that the court "weighed"; it does not require a written or oral recitation of all statutory factors.' " *State v. Jones*, 2d Dist. Clark No. 2012-CA-32, 2013-Ohio-4242, ¶ 13, quoting *Flagg* at ¶ 28, and citing Juv.R. 30(G). Instead, the issue is whether the record contains "sufficient evidence to substantiate [the court's] conclusion that, after an investigation * * *, there were reasonable grounds to relinquish its jurisdiction and transfer the case to the Common Pleas Court." *Carmichael*, 35 Ohio St.2d at 8, 298 N.E.2d 568.

{¶ 29} In *State v. Watson*, 47 Ohio St.3d 93, 547 N.E.2d 1181 (1989), a juvenile

defendant contended that he had demonstrated amenability and that the trial court had abused its discretion in ordering that he be transferred to adult court. *Id.* at 96. The Supreme Court of Ohio noted the following facts about the amenability hearing:

> At the hearing, the court clinic psychiatrist, Dr. Patrick Lagan, testified that appellant showed "no evidence of any psychiatric disorder." Appellant presented testimony from his junior high school principal, two teachers, and the school guidance counselor that he was an average student who had not caused major discipline problems. A senior director of the West End YMCA testified that appellant was "very responsible and reliable." Appellant's aunt and his grandmother also testified to his good character. *The court noted that appellant had not [sic] record of trouble with the juvenile authorities.*

(Emphasis added). *Id.* at 94.

{¶ 30} As a preliminary point, if prior treatment in the juvenile system were required, the Supreme Court of Ohio would have reached a different result in *Watson*. Furthermore, the juvenile court in *Watson* does not appear to have engaged in the type of exacting discussion the majority has demanded in the case before us.

{¶ 31} As an additional matter, when responding to the juvenile's arguments, the Supreme Court of Ohio held in *Watson* that "[t]he seriousness of the alleged act is relevant to 'the assessment of the probability of rehabilitating the child within the juvenile justice system' for a number of reasons." *Id.* at 96. These reasons included the fact that "[a] juvenile who has demonstrated the ability to commit a major felony may require more time for rehabilitation than one whose offenses are less serious. Because of a

juvenile's age, there may not be sufficient time remaining for rehabilitation to take place before the twenty-first birthday, even though the juvenile is otherwise amenable to rehabilitation." *Id.* In addition, "the nature of the alleged act is usually relevant to the child's mental health, a factor which the court must also consider under Rule 30(E)(1). Generally the greater the culpability of the offense, the less amenable will the juvenile be to rehabilitation." *Id.*

**{¶ 32}** After making these remarks, the Supreme Court of Ohio affirmed the transfer decision, noting that:

Although we have found that the juvenile court properly considered the nature of the offense, this does not end our inquiry. We must still determine if the court soundly exercised its discretion. *See Carmichael*, [35 Ohio St.2d 1, 8, 298 N.E.2d 568,] *supra*, at paragraph two of the syllabus. In the instant case, appellant was the principal actor in a scheme with several other boys to beat and rob the victim, Robert Cooley. Appellant attacked Robert from behind with a tree limb, knocking him to the ground, and continued to hit him while he was down. These blows were delivered with sufficient force that any one could have been fatal. The appellant was fifteen years old and the time available to accomplish his rehabilitation was less than six years. Balancing these facts against the admittedly favorable testimony which appellant presented at the bindover hearing, we cannot say that the juvenile court abused its discretion in concluding that appellant would not be amenable to rehabilitation in the juvenile justice system.

*Watson,* 47 Ohio St.3d at 96, 547 N.E.2d 1181.

{¶ 33} The crimes D. H. committed are not significantly different than the assault involved in *Watson.* The difference is that D. H. is fortunate that his victims did not sustain greater injury or die as a result of his actions.

{¶ 34} In discussing the facts of D. H.'s alleged crimes, the majority opinion states in paragraph 3 that "the record does not support any finding that either victim needed medical attention or incurred medical expenses." In my opinion, the majority understates and minimizes the nature of D. H.'s offenses. According to the report of Dr. Fujimura, which was provided to the defense and was stipulated to at the amenability hearing:

On March 7, 2014, per the Detective Investigatory Product prepared through the Dayton Police Department (04-02-14), [D. H.] incurred his first count of Robbery, a second degree felony, due to allegedly assaulting a homeless man by punching him in the back of the head. When the victim tried to run away, this client seemingly pursued him and punched him several more times before demanding his money. The victim reportedly gave the only three dollars he had to [D. H.] who said he wanted the man's cell phone as well. After the victim replied he was too poor to have a cell phone, [D. H.] and the person filming the incident on a cell phone purportedly ran away from the scene.

*Id.* at p. 5.[3]

---

[3]I realize that Dr. Fujimura's report was sealed by our court, pursuant to Sup.R. 45(E). *See State v. D. H.*, 2d Dist. Montgomery No. 26383 (Jan. 16, 2015). I do not see the basis for confidentiality, as our decision failed to consider any of the applicable criteria in Sup.R.45(E)(2)(a)-(c) for sealing records. There is also no reason why the records should be deemed confidential. As the Supreme Court of Ohio has noted, once a

{¶ 35} The next crime escalated in severity, and was described in Dr. Fujimura's report as follows:

> This client received his second pending count of Robbery, a second degree felony, on April 7, 2014. According to the Detective Investigatory Product prepared through the Dayton Police Department (04-08-14), [D. H.] and another juvenile male co-defendant allegedly demanded money from another homeless male[,] then assaulted him after he told them he had no money. [D. H.] and his co-defendant reportedly knocked the victim to the ground, kicked him in his ribs and punched him about his body. This client and his co-defendant allegedly searched the victim's pockets and found his cell phone as well as an RTA bus pass. The two male co-defendants seemingly took the victim's property, kicked him several more times, and ran away.

*Id.*

{¶ 36} The trial court was well aware of these facts, and stated, "thank God he didn't kill anybody or break any bones, but he assaulted two homeless men who were not

---

juvenile is transferred to adult court, "the need for confidentiality will dissipate." *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juv. Div.*, 90 Ohio St.3d 79, 88, 734 N.E.2d 1214 (2000). In any event, the facts I mention in the main text would not be considered "confidential" or privileged. Finally, I note that the psychologist's report was not included in the appellate record, but was attached to D. H.'s brief. As a general rule, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.") *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. However, the report was actually part of the trial court proceedings, and both sides discussed the report in their briefs. There is also no dispute that the report is the one that was used in the trial court. Rather than require the parties to unnecessarily supplement the record, I have referred to the report (as the majority has already also done in its decision).

able to care for themselves." June 9, 2014 Transcript of Proceedings, Vol. II, p. 52.

**{¶ 37}** As was noted, the underlying crimes in this case are not significantly different from the crime involved in *Watson*, although, luckily for D. H., his repeated kicks and punches to the body of a homeless person did not cause that individual death or more serious injury.

**{¶ 38}** Other evidence in the record supporting the conclusion that D. H. was not amenable to rehabilitation in the juvenile system includes D. H.'s complete failure to respond to repeated and consistent attempts to aid him during nearly two years at Stivers School of the Arts, where he amassed more disciplinary referrals than any other student in the Dayton Public School District during 2013-2014 (47 alone, during the 8 months he attended before being expelled from Stivers after his crimes were discovered).

**{¶ 39}** During his almost two-year tenure at Stivers, D. H. was provided with one-on-one counseling, and he also was given progressive discipline like lunch detention, after school detention, Saturday school, and suspensions. He was even assigned an adult escort who walked him from class to class. However, nothing worked, and D. H. continued to leave school without permission and skipped classes even when he had been denied permission to leave the classroom.

**{¶ 40}** D. H. was also given substantial resources to help with his academic performance, including classes with a teacher who had ten or fewer students, and a teacher who was assigned to him for a study skills period, which could be used for tutoring or help with classes. Despite these attempts to assist D. H., he was not progressing academically – which is not surprising, given his lack of attendance. The trial court noted this fact in its remarks during the amenability hearing. June 9, 2014 Transcript of

Proceedings, Volume II, p. 54.

{¶ 41} At the amenability hearing, the State also discussed D. H.'s actions in juvenile detention, where he had bragged, joked around, and had gotten disciplined for rule infractions, again demonstrating his indifference to compliance with rules.[4]

{¶ 42} At the time of the amenability hearing, D. H. was almost eighteen years old, and nothing that had occurred to date indicated that he would positively respond to any type of rehabilitative efforts. Instead, his behavior, both at school and in a criminal context, was increasing in severity.

{¶ 43} As I noted previously, the majority refers in paragraph 17 to the trial court's failure to address how the juvenile system could accommodate D. H.'s "health needs." However, the only health issues mentioned in the report were that D. H. was taking medication (although in an inconsistent way) for Attention Deficit/Hyperactivity Disorder, and had allergies and asthma. Report of Dr. Fujimura, p. 4. He also wore glasses. *Id.* There is no indication in the record that these were serious health concerns.[5]

{¶ 44} The majority additionally concludes that it cannot reasonably review the decision because the trial court did not discuss D. H.'s educational needs and how they might be served in the juvenile setting. I have already stressed that the court was not required to engage in this type of specificity. However, the trial court did discuss the fact that D. H. was neither mentally ill nor "mentally retarded," which would weigh against transfer. June 9, 2014 Transcript of Proceedings, Vol. II, p. 55. In this regard, the majority notes in paragraph 6, fn.2, that the trial court's conclusion of no mental illness "is

---

[4] Dr. Fujimura's report also mentioned these points.
[5] The report does indicate that D. H. 's father had some substantial health issues, but these health concerns are not relevant. *See* Dr. Fujimura's Report, pp. 3, 7, and 8-9.

contrary to the psychologist's report, which did discuss a mental health diagnosis recognized by the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th Ed. 2013) and the need for treatment, which will not be quoted here to protect health care privacy."

{¶ 45} As a preliminary matter, the trial court record lacks any reference to the American Psychiatric Association Manual. Courts are not permitted to rely on information that was not properly entered into evidence. *Compare State ex rel. Ohio Soc. for the Prevention of Cruelty to Animals, Inc. v. Hocking Cty. Bd. of Commrs.*, 4th Dist. Hocking No. 13CA2, 2014-Ohio-3348, ¶ 22-25 (noting that the appellate court, acting as a trial court in a mandamus action, would be able to consider various statements from the American Veterinary Medical Association Guidelines for the Euthanasia of Animals, 2013 Edition as evidence *only* because the parties had stipulated to the guidelines as "learned" and as a "reliable authority," and had been admitted into evidence.   The court would not be able to accept the Guidelines as an exhibit, because the parties had not agreed to its admission). (Emphasis added).   *See also Moretz v. Muakkassa*, 137 Ohio St.3d 171, 2013-Ohio-4656, 998 N.E.2d 479 (holding that an appellate court had erred in approving admission of an illustration from a medical textbook because the illustration was subject to the "learned-treatise hearsay exception set forth in Evid.R. 803(18) and therefore shall not be admitted into evidence as an exhibit over the objection of a party.")   *Id.* at ¶ 57.

{¶ 46} In concluding that the admission of the illustration from the textbook was also prejudicial, the Supreme Court of Ohio noted that:

> Evid.R. 803(18) contains "safeguards against unreliability and misuse":
>
> Misunderstanding is guarded against by the fact that the statements

in learned treatises come to the trier of fact *only through the testimony of qualified experts who are on the stand to explain and apply the material in the treatise.* The rule provides that the treatise may be read into evidence but not received as an exhibit to prevent the trier from giving it excessive weight or attempting to interpret the treatise by itself.

(Emphasis added.) *Id.* at ¶ 63, quoting 2006 Staff Notes to Evid.R. 803(18).

{¶ 47} Obviously, when a learned treatise has not even been discussed in the trial court, an appellate court would not be permitted to introduce it and to rely on it. We are not the trier of fact, and even if we were, the information in question was never properly admitted into evidence.

{¶ 48} As a further matter, Dr. Fujimura indicated that D. H. "did not present evidence of a psychosis or a formal thought disorder." See Dr. Fujimura's Report, p. 13. In her clinical summary and recommendations, Dr. Fujimura also did not recommend treatment for D. H., other than stating that "[d]ue to being almost age 18 and being so far behind academically, it seems feasible for [D. H.] to consider participating in a vocational program to prepare him for independent living." *Id.* at p. 12.

{¶ 49} The trial court also discussed D. H.'s limited education and poor grades, but concluded that this would be expected in an individual who never attend school. *Id.* at p. 54. In this regard, Dr. Fujimura's report indicates that despite cognitive ability that was average or low average, D. H.'s educational level was well below what one would expect. Dr. Fujimura's Report, pp. 9-10. However, D. H. had 55 unexcused absences alone during 110 school days in 2013-2014, to say nothing of the 40 times he was tardy and the 47 discipline referrals he received in 2013-2014, including 27 times that he left school

without permission. *Id.* at pp. 5-6. Again, poor achievement despite average or low average ability would not be surprising under these circumstances. In addition, D. H.'s principal stressed that D. H. was completely resistant to any help that was offered. Thus, the evidence in the record supports the trial court's conclusion on D. H.'s educational ability and how it related to transfer.

**{¶ 50}** Accordingly, for the reasons stated, I very respectfully dissent from the majority's decision to remand this case for further analysis by the trial court. Our decision to remand is not supported by pertinent case law or by the facts of this case. In addition, the trial court's transfer decision is sufficiently supported by the record and should be affirmed.

. . . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Brock A. Schoenlein
Hon. Anthony Capizzi
Hon. Mary K. Huffman